### A98A0893. PAYNE et al. v. KANES.
(507 SE2d 266)

BEASLEY, Judge.

Edward Vanderslice and his tax attorney/financial advisor, Panos Kanes, brought this abusive litigation action against Mr. Vanderslice's former wife, Patricia Payne Vanderslice, and her brother Doyle Payne, as a result of Ms. Vanderslice's suit for fraud against them. The large record in this case, and the nature of it, require cutting a clear path through a dense thicket.

Payne was included as a defendant in this action because he allegedly took an active part in the prior litigation even though he was not an actual party. He sought partial summary judgment on the ground that plaintiffs had not provided him with notice of their intent to assert an abusive litigation claim against him during the pendency of the earlier action, as required by OCGA § 51-7-84 (a). Plaintiffs and defendant Patricia Vanderslice filed cross-motions for summary judgment on the merits. The trial court granted Kanes' motion and denied the others' motions. Defendants appeal the summary judgment to Kanes.

The Vanderslices' 1984 divorce decree directed Mr. Vanderslice to create a trust with life insurance death benefits of $315,000 to fund his $2,500 monthly alimony obligation after his death. The trust specified that the policy was to be purchased either by (a) a single premium to be paid at the inception of the policy, or (b) an annual premium over a period of less than ten years, in which case payment of future premiums would be secured by certain collateral. Kanes represented Mr. Vanderslice in his selection and purchase of the life insurance policy.

Mr. Vanderslice told Ms. Vanderslice that he had decided to purchase a policy from Prudential Insurance Company through a single-premium payment in the amount of $77,533.11. She was not informed that this single premium due at the October 27, 1984 inception of the policy represented the discounted value of $14,650.45 annual premiums due for the first seven years and that, under the policy, Mr. Vanderslice remained liable for annual premiums in the

same amount from October 27, 1991, until October 27, 2005, at which time such premium increased to $24,207.55. His statement to her that the policy would be funded by a single premium was based on Prudential's representation to him that dividends accruing on the original premium would be sufficient to fund future payments. As a result of Ms. Vanderslice's approval of this policy, the security for future premium payments was released by the trustee.

Mr. Vanderslice later received a notice from Prudential that in order to maintain the life insurance, he would have to begin making annual premium payments in the amount of $14,650.45 beginning on the October 1991 date. In a letter to Kanes, a Prudential representative conceded that this was contrary to Mr. Vanderslice's original intent in purchasing the policy, but he stated that the additional payments were due to unforeseen changes in the economic environment.

After receiving this notice, Mr. Vanderslice asked Ms. Vanderslice to agree to a modification of the divorce decree. He informed Kanes that Ms. Vanderslice had agreed to modify the decree so as to terminate the trust but she did not want to incur any legal expenses in the process. As a result, Kanes referred Ms. Vanderslice to attorney Richman, who was paid by Mr. Vanderslice to represent her in the modification proceeding. In October 1992, the court entered a consent order terminating the trust pursuant to a modification agreement. The agreement recognized as the reason for the modification that Prudential had "announced a substantial and unexpected increase in the premiums to be charged." Mr. Vanderslice's attorney during the modification process was Davis.

In the spring of 1994, Mr. Vanderslice asked Ms. Vanderslice to agree to a termination of his alimony obligations because he could no longer afford them. She began to question the truth of his earlier statements concerning the premium increase. Through her brother, Doyle Payne, Ms. Vanderslice retained attorney Hughes to investigate. Communications took place between Payne and Hughes, mostly through three-way telephone conversations which included Ms. Vanderslice. In June, Hughes received a letter from Prudential explaining the terms of the policy and stating there had been no increase in the premiums. After reading the letter and policy, Ms. Vanderslice authorized Hughes to institute legal proceedings alleging misrepresentations concerning the premium increase. Hughes testified that, with Payne's approval, he decided what claims to assert and whom to name as defendants.

A few months later, in September, Ms. Vanderslice filed suit against Mr. Vanderslice, attorney Davis, and Kanes. The complaint alleged that Kanes had falsely represented to her, her attorney Richman, and the court that the policy premiums had substantially and unexpectedly increased, and that he made such representations

either knowing they were false or with conscious and reckless disregard of the consequences of his failure to investigate their truthfulness. Although no claim for legal malpractice was asserted, an affidavit executed by attorney Garvin was attached to the complaint. Based on his review of the pleadings in the fraud action, his opinion was that Kanes had been negligent in allowing misrepresentations to be made to Ms. Vanderslice.

After suit was filed, Hughes received a letter notifying him and his client of the claim that allegations of fraud in the underlying complaint constituted abusive litigation. With respect to Kanes, the letter stated that he had not had any conversations with Ms. Vanderslice and was not the attorney of record in the modification proceeding. Hughes delivered the letter to Payne with a recommendation that the action be dismissed without prejudice so further investigation could be conducted. Payne could have accepted this recommendation on his own authority, as he had been given a general power of attorney by his sister. Instead, he said he "want[ed] to think about it and talk to Ms. Vanderslice about it and get back to [Hughes]." After consulting with Ms. Vanderslice, Payne informed Hughes that his representation was being terminated, and that he and Ms. Vanderslice were in the process of obtaining new counsel. The suit was later dismissed without prejudice. When attorney Garvin was deposed in this suit, he withdrew his affidavit against Kanes.

1. Defendants first contend the court erred in granting summary judgment to Kanes against Payne because he was not provided with the notice required by OCGA § 51-7-84 (a). It provides:

"As a condition precedent to any claim for abusive litigation, the person injured . . . shall give written notice . . . to any person against whom such injured person intends to assert a claim for abusive litigation and shall thereby give the person against whom an abusive litigation claim is contemplated an opportunity to voluntarily withdraw, abandon, discontinue, or dismiss the civil proceeding. . . ."

It is undisputed that Kanes did not give written notice that he intended to sue Payne for abusive litigation; rather, he gave notice only of his intent to sue Patricia Vanderslice. Although Payne's involvement in the original fraud action had not been revealed to Kanes when the notice was sent, OCGA § 51-7-84 (a) does not create any exception to the notice requirement in such circumstances. Once Kanes decided to pursue an abusive litigation claim, he bore the obligation of determining against whom to assert it. Because Payne was not identified as a potential abusive litigation defendant in the letter sent to his sister, he was not alerted to the possibility of a lawsuit being brought against him and thus was not given the notice which the statute requires.

"Here, [Payne] as one who took 'an active part' but was not an actual party, was entitled to be particularly specified in the letter as the one against whom [Kanes] would seek damages . . . if the [complaint] were not withdrawn or dismissed."[1] " 'The abusive litigation tort set forth in OCGA § 51-7-80 et seq. is in derogation of the common law, and must be strictly limited to the meaning of the language used, and not extended beyond the plain and explicit statutory terms.' [Cit.]"[2] By its plain terms, OCGA § 51-7-84 (a) requires notice as a condition precedent to an abusive litigation claim. Due to the lack of required notice, the trial court erred in granting summary judgment to Kanes on his abusive litigation claim against Payne (and in denying Payne's motion for partial summary judgment).[3]

2. Defendants contend that because genuine issues of fact exist as to whether Ms. Vanderslice's claims against Kanes were asserted in good faith, he was not entitled to summary judgment.

Good faith is a complete defense but it is "an affirmative defense and the burden of proof shall be on the person asserting the actions were taken in good faith." OCGA § 51-7-82 (b). Ms. Vanderslice could show she acted in good faith if "to the best of [her] or . . . her attorney's knowledge, information, and belief, formed honestly after reasonable inquiry," her fraud claim was "well grounded in fact" and "warranted by existing law." OCGA § 51-7-80 (4).

In her complaint, Ms. Vanderslice alleged that Kanes had made false representations concerning the insurance policy to her, the divorce court, and her attorney Richman.

(1) Ms. Vanderslice acknowledged she did not meet Kanes until the discovery stage of this suit, thereby conceding he made no representations to her upon which the defense of good faith could be founded. (2) As to Ms. Vanderslice's contention that a jury could find that Kanes made misrepresentations to the court based on evidence showing he drafted the 1992 modification agreement, Kanes testified without contradiction that he composed an earlier version of the agreement but not the final draft, and the earlier draft is not in the record. So this provides no evidence in support of a fraud claim. (3) But attorney Richman testified that his understanding that the pre-

---

[1] *Talbert v. Allstate Ins. Co.*, 200 Ga. App. 312, 314 (2) (408 SE2d 125) (1991).

[2] *Owens v. Generali — U. S. Branch*, 224 Ga. App. 290, 292 (1) (480 SE2d 863) (1997); *Paino v. Connell*, 207 Ga. App. 553 (2) (428 SE2d 446) (1993). See generally *Heard v. Neighbor Newspapers*, 259 Ga. 458, 459 (5) (a), (b) (383 SE2d 553) (1989). In both *Owens* and *Talbert*, supra, n. 1, the defendants' involvement in the underlying litigation was known when the notice was provided; the fact that Payne's involvement was not known until after his sister's fraud action terminated makes no difference.

[3] For one view of Georgia's sanctions against frivolous litigation, see Byron C. Keeling, "Toward a Balanced Approach to 'Frivolous' Litigation: A Critical Review of Federal Rule 11 and State Sanctions Provisions," 21 Pepperdine L. Rev. 1067, 1106-1109 (1994).

miums had increased was based on statements made by both Kanes and Ms. Vanderslice concerning representations made by Mr. Vanderslice to them. This testimony provides some evidence from which a jury could find that Kanes made misrepresentations to Ms. Vanderslice's lawyer concerning the premium increase. If so, there is evidence the fraud claim was brought in good faith. Whether attorney Richman relied on such misrepresentations is an open question of fact.

Therefore, the court also erred in granting summary judgment to Kanes on his claim against Ms. Vanderslice.

*Judgment reversed. Pope, P. J., and Ruffin, J., concur.*

DECIDED SEPTEMBER 25, 1998 —

*Jones, Copeland, Lefkowitz & Greer, Taylor W. Jones, Linda R. Greer*, for appellants.

*Wilson, Morton & Downs, Robert E. Wilson, Ogletree, Deakins, Nash, Smoak & Stewart, Allen W. Groves*, for appellee.